FILED
2019 Jan-09 AM 10:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CAROL H. STEWART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:17-CV-1423-KOB |
| | ) |
| HARTFORD LIFE AND ACCIDENT | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This matter comes before the court on "Plaintiff's Opposed Motion for Discovery." (Doc. 43). Plaintiff Carol Stewart brought an ERISA claim against Hartford Life and Accident Insurance Company for (1) denying her long-term disability (LTD) claim, and (2) denying her waiver-of-life-premium (WOLP) claim. (Doc. 1). Ms. Stewart's motion for discovery presents a variety of arguments, and her proposed discovery contemplates far-reaching interrogatories, requests for production, requests for admissions, and depositions. (Doc. 44). For the following reasons, the court will GRANT IN PART the motion as to the specific requests identified in this Opinion and will DENY the motion as to Plaintiff's remaining discovery requests.

I.  **Standard of Review**

The motion under consideration seeks discovery beyond the scope of the administrative record. But district courts reviewing ERISA benefits decisions do not typically permit discovery outside the administrative record. *See Quinn v. Qwest Comm'ns Corp.*, No. CV-09-BE-2403-E, 2011 WL 13227997, at *2 (N.D. Ala. Sept. 30, 2011) ("[A]n ERISA plaintiff cannot generally supplement the Administrative Record with additional evidence after the plan administrator's

1

decision has been made.") (citing *Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1195 (11th Cir. 2007)). The prohibition on extra-record discovery is not absolute, though, and the framework for ERISA review elucidates when courts should allow additional discovery.

The language of ERISA does not dictate the standard of review courts should apply when reviewing the benefits decision of plan administrators. But the Supreme Court determined that, when an insurance policy vests the plan administrator with discretion to review claims, the reviewing court should apply an arbitrary and capricious standard of review to the plan administrator's decisions. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989).

The Eleventh Circuit has since established a six-step procedure for reviewing ERISA benefits decisions:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
> (5) If there is no conflict, then end the inquiry and affirm the decision.
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins.*, 644 F.3d 1350, 1355 (11th Cir. 2011).

Applying this framework, if a court determines the benefits decision was *de novo* wrong under Step 1 but that reasonable grounds for the decision existed under Step 3, the plaintiff usually requires extra-record discovery to prove the existence and influence of the

administrator's conflict of interest at Steps 4 and 6. The administrative record, after all, rarely discloses "much, if any, information about the conflict of interest." *Harvey v. Std. Ins.*, 787 F. Supp. 2d 1287, 1291 (N.D. Ala. 2011).

The court recognizes that a structural conflict of interest presents "an unremarkable fact in today's marketplace." *See Blankenship*, 644 F.3d at 1356. The court also recognizes that, although not precedent or binding, the Eleventh Circuit has affirmed that conflict discovery is not necessary when the dispute can be resolved under *de novo* review in Step 1. *Blair v. Metro. Life Ins.*, 569 F. App'x 827, 832 (11th Cir. 2014). Nevertheless, this court must consider a conflict of interest as a factor in its analysis under the sixth and final step of reviewing ERISA benefits decisions. *See Metro. Life Ins. v. Glenn*, 554 U.S. 2343, 2346 (2008). And the court often requires extra-record discovery to do so.

But the court need not always limit this extra-record discovery to just conflict discovery. For instance, reviewing courts "are limited to the record that was before [the administrator] when it made its decision" during Step 1. *Glazer v. Reliance Std. Life Ins.*, 524 F.3d 1241, 1247 (11th Cir. 2008). But the "record before the administrator" can differ importantly from the official administrative record defendant-administrators enter into evidence. *See, e.g.*, *Johnston v. Aetna Life Ins.*, 282 F. Supp. 3d 1303, 1307 (S.D. Fla. 2017) (concluding that the Eleventh Circuit "does not foreclose discovery of administrator's consideration of other evidence that is not in the administrative record").

Stated differently, if the administrative record proves insufficient for the court to complete its *de novo* review under Step 1, a reviewing court can permit extra-record discovery to the extent that the requested discovery will better align the record before the court and the "record before the administrator" at the time it made the benefits decision.

## II. Factual Background

Plaintiff, Carol Stewart, began working as an attorney at the Burr & Forman law firm in 1983 and became an equity partner at Burr & Forman in 1990. Burr & Forman offered a welfare benefit plan, for which Sun Life Financial began serving as underwriter and claims administrator in 2007. This welfare benefit plan included LTD and life insurance, and Sun Life issued both policies, which covered all Burr & Forman equity partners, including Ms. Stewart.

In 2007, doctors diagnosed Ms. Stewart with Parkinson's disease, a progressive degenerative neurological disease. She began receiving partial disability benefits under the Sun Life LTD policy in 2009.

Sun Life continued to serve as insurer and claims administrator of the Plan until September 30, 2010. Effective October 1, 2010, Defendant Hartford replaced Sun Life as the Plan's claims administrator and issued its own LTD and life insurance policies. Ms. Stewart maintains that the Sun Life policies and the Hartford policies existed within the same continuous "plan" (i.e., the Burr & Forman Plan), as the Hartford LTD policy uses the term.

Ms. Stewart continued to collect partial disability benefits under the Sun Life LTD policy until the day she retired, March 31, 2012. Upon retirement, Ms. Stewart began collecting full disability benefits under the Sun Life LTD policy and will continue to receive those benefits until her 65th birthday, provided she continues to meet the policy's definition of "Totally Disabled."

Ms. Stewart submitted a Long-Term Disability claim and a Waiver-of-Life-Premium claim under the Hartford policies on or about July 18, 2012. To verify her disability, she relied on the diagnosis and evaluations of Dr. David Standaert, her primary specialist for Parkinson's disease-related issues since 2007.

Ms. Stewart received a letter dated September 24, 2012, informing her that Hartford had denied her LTD claim. The letter explained that she was not eligible for disability benefits through Hartford because she was "continuing to receive total disability benefits from Sun Life Financial." Hartford relied on the following language from the Hartford-issued LTD policy:

> If You are receiving or are eligible for benefits for a Disability under a prior disability plan that:
> 1) was sponsored by Your Employer; and
> 2) was terminated before the Effective Date of The Policy;
> no benefits will be payable for the Disability under The Policy.

(the "prior plan" clause).

Ms. Stewart appealed this determination, and Hartford's appeals unit affirmed the initial denial in November 2012 for identical reasons.

Ms. Stewart received another letter dated October 1, 2012, informing her that Hartford had also denied her waiver-of-premium claim as to the life insurance. The letter explained that Hartford determined Ms. Stewart did not meet the policy's definition of "disabled." The policy provides that disabled "means You are prevented by injury or sickness from doing any work for which You are qualified by: 1) education; 2) training; or 3) experience." The initial WOLP claim denial letter stated that, although Ms. Stewart may not have been able to continue working as a partner at a law firm, her condition did not prevent her "from performing any work." Ms. Stewart appealed and received word in December 2012 that Hartford's Appeals Department had reviewed her claim and determined she did in fact meet the definition of disabled and that Hartford had approved her WOLP claim. That letter also informed Ms. Stewart that Hartford might request updated medical information to verify continued disability and that it would be reviewing her claim to clarify her cognitive limitations.

Shortly after the approval of her WOLP benefits, Hartford ordered and Ms. Stewart underwent a neuropsychological evaluation (NPE) and a behavioral functional evaluation (BFE). Hartford's internal communications indicate it intended to clarify Ms. Stewart's cognitive functionality with further testing. Dr. Nick DeFilippis, a neuropsychologist, performed the NPE and BFE in a single day on March 7, 2013. Hartford hired Dr. DeFilippis through PsyBar, an independent medical evaluation contracting firm, and Ms. Stewart had no previous relationship with Dr. DeFilippis before the six-hour examination.

Following Dr. DeFilippis's examination, Ms. Stewart received a letter dated April 10, 2013, from Hartford informing her that, pursuant to a claim review, she was no longer eligible for WOLP benefits, as she did not meet the policy's definition of disabled. The letter provided that Hartford's determination relied on Ms. Stewart's entire claim file, but it specifically referenced the NPE and BFE as supporting its reversal. The administrative record indicates that Hartford may have relied entirely on the NPE and BFE results, potentially under the mistaken impression that an "attending physician" had completed the NPE and BFE. Additionally, Ms. Stewart notes that the administrative record indicates that Hartford examiner Ian Hardy made the decision to deny Ms. Stewart's claim, despite examiner Vanessa Balogh having handled practically every aspect of the initial claim and appeal until Hardy's final decision.

Dr. DeFilippis and Dr. Standaert, Ms. Stewart's treating physician, are the only specialists referenced in the administrative record whose opinions are based on physical and clinical examinations. Dr. Standaert is a medical doctor specializing in Parkinson's disease; Dr. DeFilippis is a clinical and neuropsychologist with no particular Parkinson's expertise, and he is not a physician.

Ms. Stewart requested that Hartford reconsider its decision; Hartford ultimately affirmed the April 10 decision denying her WOLP benefits in a November 2013 letter. The November letter stated that Hartford relied on the entire claim file, including Dr. Standaert's evaluations and Dr. DeFilippis's single evaluation, as well as the reports of at least two independent medical reviewers who evaluated Ms. Stewart's file but did not perform a physical examination.

Ms. Stewart brought this ERISA challenge and now moves this court to permit extra-record discovery, a request the court reviews against the background of her claim.

**III. Analysis**

Ms. Stewart has moved for expansive discovery, and most of her requests should be denied. For instance, Ms. Stewart requests discovery about Hartford's interpretation of the "prior plan" clause and the definition of "disabled" but has not explained how the discovery would aid this court in either its *de novo* review, determination of a conflict of interest, or determination of the impact that a potential conflict of interest could have had on the ultimate benefits decision. This court does not opine that all extra-record discovery requests related to policy interpretation are categorically inappropriate, but it does conclude that Ms. Stewart has failed to show the utility of such evidence in this case.

But Ms. Stewart's motion for discovery highlights several areas where additional discovery could fill in some gaps left by the administrative record. Additionally, Ms. Stewart's motion for discovery regarding Hartford's conflict of interest should be granted. Thus, the court grants Plaintiff's motion for discovery on the following subjects.

A. *Hartford's potential conflict of interest*

Plaintiff's proposed discovery includes several requests aimed at determining the existence and extent of Defendant's conflict of interest. In keeping with the Supreme Court and

7

Eleventh Circuit's guidance, this court will GRANT Plaintiff's motion for discovery regarding Defendant's conflict of interest. But the court limits this discovery to the narrow question of Hartford's conflict of interest as it pertains to this claim and emphasizes that its Order granting limited discovery does not permit Plaintiff to engage in expansive and unwarranted discovery. Thus, this court will GRANT Plaintiff's requests for Interrogatory No. 2, Interrogatory No. 3, Interrogatory No. 6, and Request for Production No. 6.[1]

    B.  *Details of April 10, 2013 denial*

Hartford initially denied Ms. Stewart's WOLP claim on October 1, 2012, explaining that she was not disabled according to the Hartford life insurance policy's definition. After Ms. Stewart's appeal, Hartford reversed its initial decision and approved her WOLP claim in December 2012 after determining that she did meet the policy's definition of disabled. Hartford subsequently ordered a neuropsychological evaluation, which took place in March 2013. Then, in a letter dated April 10, 2013, Hartford informed Ms. Stewart that, pursuant to that evaluation, it found insufficient evidence to document Ms. Stewart's continued disability and that she was no longer eligible for WOLP benefits.

Hartford's approval letter to Ms. Stewart mentions its authority to periodically "verify" her *continued* disability and its intention to review her claim to "clarify" her *current* cognitive limitations. But the administrative record does not clearly articulate the difference, if any, between those two authorizations, nor does it adequately specify under which authorization Hartford ultimately decided to deny Ms. Stewart's WOLP claim. The Hartford policy allows Hartford to have insureds "examined at reasonable intervals" upon their WOLP claim approval

---

[1] Interrogatories Nos. 2 and 3 request the identities of the individuals involved in Plaintiff's claims denials. Interrogatory No. 6 requests the compensation details for the individuals identified in response to Interrogatories Nos. 2 and 3. Request for Production No. 6 requests performance evaluations for several Hartford employees mentioned in the administrative record as participants in Ms. Stewart's benefits determination.

but does not indicate what deference Hartford affords approval decisions in view of these examinations. Clarity on these issues could help the court review *de novo* Hartford's benefits decision. Thus, this court will GRANT Plaintiff's requests for Interrogatory No. 10(e); the first, second, and fifth bullet points of Interrogatory No. 19; and Plaintiff's Request for Production No. 7.[2]

### C. *Dr. DeFilippis's appointment as medical evaluator*

Shortly after Hartford's December approval of Ms. Stewart's WOLP claim, it ordered an independent neuropsychological evaluation through the contracting firm PsyBar. Ultimately, Dr. DeFilippis, a professor and practitioner of both clinical and neuropsychology in Atlanta, examined Ms. Stewart for approximately six hours on a single day in March 2013. The record contains scant details regarding the rationale for ordering the testing and why Hartford and PsyBar selected Dr. DeFilippis. Information regarding the objectives of the March neuropsychological examination, the rationale for appointing Dr. DeFilippis as evaluator, and the procedure for weighing various evaluations in determining disability could help the court review *de novo* Hartford's benefits decision.

Thus, this court will GRANT Plaintiff's requests for Interrogatory No. 10(a)–(c), the third bullet point of Interrogatory No. 19, and Plaintiff's Request for Production No. 18.[3]

### D. *Role of Hartford examiner Ian Hardy*

Vanessa Balogh, an examiner based in Sacramento, California, apparently was the examiner assigned to Ms. Stewart's case. Ms. Balogh made the initial decision to deny Ms.

---

[2] Interrogatories Nos. 10(e) and 19 request clarity regarding Hartford's authority to review and overturn Ms. Stewart's favorable benefits decision. Interrogatory No. 19 also requests information regarding Hartford's decision to order neuropsychological testing on Ms. Stewart after approving her claim. Request for Production No. 7 requests Hartford's claim procedure that allows Hartford to review Ms. Stewart's favorable benefits decision.

[3] Interrogatory No. 10(a)–(c) requests the identities of the individuals who ordered the neuropsychological testing, selected Dr. DeFilippis to administer the neuropsychological testing, and selected the specific tests to which Ms. Stewart was subjected. Interrogatory No. 19 and Request for Production No. 18 request information about Hartford's authority to order neuropsychological testing after approving Ms. Hartford's WOLP claim.

Stewart's WOLP claim on October 1, 2012; she forwarded Ms. Stewart's initial appeal to Hartford's appeals unit and drafted the December letter reversing the initial denial; and she ordered and scheduled the March neuropsychological examination as part of an ongoing review. Then, on March 29, 2013, Atlanta-based examiner Ian Hardy recommended terminating Ms. Stewart's WOLP claim.

Additional information on Mr. Hardy's role in and knowledge of Ms. Stewart's WOLP claim could help this court when it reviews *de novo* Hartford's benefits decision. Thus, this court will GRANT Plaintiff's requests for Interrogatory No. 8 (as it relates to Ian Hardy), Interrogatory No. 10(f), and the fourth bullet point of Interrogatory No. 19.[4]

## IV. Conclusion

For the reasons discussed above, the court will GRANT IN PART and DENY IN PART Plaintiff's Motion for Discovery. (Doc. 43). The court will GRANT Plaintiff's Motion for Discovery as to Interrogatories No. 8 (as it relates to Ian Hardy); No. 10(a)–(c), (e), and (f); and No. 19. The court will GRANT Plaintiff's Motion for Discovery as to Requests for Production No. 7 and No. 18. The court will DENY Plaintiff's Motion for Discovery as to the remaining Interrogatories, Requests for Production, Requests for Admissions, and Requests for Depositions.

The court cautions the plaintiff that this Opinion and accompanying Order do not grant her license to engage in an uninhibited fishing expedition. The court grants discovery for only the limited topics discussed above and only to the extent that it will aid this court in reviewing *de novo* Hartford's denial of Ms. Stewart's WOLP claim or in assessing the impact of Hartford's conflict of interest.

---

[4] Interrogatories Nos. 8, 10(f), and 19 request information about Ian Hardy's assignment to Ms. Stewart's benefits claims.

**DONE** and **ORDERED** this 9th day of January, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE